Good afternoon Illinois appellate court 1st district court is now in session. The 6th division. The honorable justice, Mary, I'll make for presiding case number 22 dash 0, 4 to 7 people versus Cecil smart. Good afternoon, everybody welcome to the 6th division. You both probably know you have 20 minutes aside. If necessary, we can give you a little more than that, but we'd ask you to try to stick to that time frame. In just a minute, I'm going to ask both parties to introduce themselves, tell us who you represent and for the appellate. Let us know if you'd like to reserve any of that 20 minutes. Or we both so please good afternoon. My name is Kara Kurland on behalf of the appellate. Mr. Cecil smart, and I'd like to reserve 5 minutes for rebuttal. Absolutely good afternoon. I'm assistant states attorney, Mary Boland and I am. Covering for the person who wrote the brief. My name is also on the brief as I supervise the brief. So hopefully. I will be able to address all the points of the court this morning or this afternoon. Thank you. Well, I intend to take about 10 minutes. It shouldn't be too long. And thank you for filling in. All right. Whenever you're ready, Mr. May it please the court. This is a case about credibility. There was no physical evidence and no confession. Rather, the only evidence presented was testimony by both parties. Witnesses. Each corroborating a different version of events. In other words, this case was a credibility contest. And this credibility contest was close. But when the state and Mr. smarts defense counsel. Introduced and repeatedly emphasize inadmissible testimony. Throughout the entirety of the trial, they destroyed Mr. smarts credibility. And bolster that of the state's main witness. For these reasons, Mr. smart was denied a fair trial and his conviction must be reversed. I'm going to begin with the 1st issue involving the trial courts error. In admitting pre trial, the other act involving Mr. smart and. Now, the state concedes that this other act was inadmissible for propensity purposes. That is exactly how it was used. The state's argument at trial was that Mr. smart was a man. Who displayed a pattern of abusing boys, which culminated in this charge defense. The state relied heavily on this other act when making that argument. In fact, during the state's closing argument, every mention of this other act. Came with the argument that he exhibited this inappropriate pattern. But we know that this other act was not admitted for any proper purpose. Because it was inadmissible for every possible purpose. The state even can see this other act was inadmissible for every common law exception. Except for intent, but intent was not an issue at this trial. The intent exception was not applicable. Because it applies when a defendant admits to the underlying conduct. But claims accident or mistake. And I know you did in your brief, but comment on the state's 2 line of cases that. Intent is relevant when you admit the act, but it's also relevant. When you're in the presence of the victim, can you comment on that? Yes, the 1st case that the state relied upon was Wilson. But in Wilson, the defendant, he admitted to the underlying conduct. He was claiming accident or mistake. So that case doesn't really apply to the state's argument at all. The 2nd case was Fretch. But Fretch is unpersuasive for 2 reasons. The 1st, as I explained in my reply brief. Is Fretch held that other acts involving the same class of victim are admissible to prove intent. But when holding that, it misquoted the Illinois Supreme Court case Ilgen. So for that reason, it already is on shaky grounds. Relied upon a misrepresentation of the law. The other reason that Fretch is unpersuasive is because the way that it uses the other act to prove intent, which is the same way that the state here is arguing the other attributes. It still amounts to propensity evidence. The argument is still because the defendant harbored the intent before he harbored it again. And that was an inference that the state was not allowed to make. During Fretch or during this trial. Here, so you're saying Fretch is wrong, essentially. You shouldn't follow. Yes, Justice McBeth. And I think you went on to distinguish it as well. But you're saying it's actually not right. Yes, there are. I do believe that Fretch can be distinguished based on the facts of the case. But the underlying premise of how it applies, the intent exception is incorrect. Here, Mr. Smart steadfastly denied that he committed any underlying conduct. His whole defense was that he never touched J.P. So by allowing the state to use this other act evidence, it was just a way for the state to backdoor in propensity evidence and argue that because Mr. Smart did it before, he did it again. And as I said, yes. How does your argument change, though, given that this was a bench trial and it's presumed that the judge knows the law, the judge followed the law and the judge only considered admissible evidence? Yes, Justice Walker. So here, that presumption is rebutted based on the record. According to Naylor, when counsel objects to inadmissible evidence and that objection is overruled, it is presumed that the trial judge considers the evidence. So here, pre-trial, the state filed a motion to admit three other acts. Defense counsel objected on numerous grounds in the response motion and at the hearing on motion, and the court deemed this other act admissible. So there, the presumption is rebutted that this wasn't considered because she explicitly stated that this was admissible evidence. Now, that is one reason that the improper introduction of this other act was not harmless beyond a reasonable doubt, because the record indicates that the judge considered this evidence. The other reason that the improper introduction of this evidence was not harmless beyond a reasonable doubt is because this case was close. There was actually a split verdict. So Mr. Smart was found guilty of two of the three charges. Another reason this case was close is because when the trial judge found Mr. Smart guilty, she explicitly discussed how two of the defendant's main witnesses were credible. And the last reason that this trial was close is because when the state was giving their closing argument, the trial judge, she interrupted a few times to discuss her concern over how close this case was and over how little evidence there was. So didn't the trial judge also find that Smart was credible? I thought I recall reading that as well. The trial judge explicitly found that Mr. Smart's brother was credible and that his brother's girlfriend or wife was credible. So she commented on credibility. The witnesses on both sides were credible, basically. Yes, yes. And when, like I was saying, when the state was giving their closing arguments, the judge, she expressed her concern. She said that because there was no physical evidence that raised concern for her and because there was no immediate outcry to family that raised concern for her. So the judge here is even showing that this was a close case. Now, I was just focusing on the one other act that was deemed admissible pre-trial, but I'm now going to transition to the other two acts that were deemed inadmissible pre-trial, and yet inexplicably they were still brought up in trial. These were not just fleeting instances of inadmissible evidence. Rather, this inadmissible evidence was discussed throughout the entirety of the trial and still defense counsel failed to object every single time. That was six times defense counsel failed to object. And then defense counsel stipulated to one of these inadmissible acts. This was ineffective assistance of counsel. It is objectively unreasonable for defense counsel to fail to use the rules of evidence to shield their client from prejudicial information. And I'll stop you for just a second. If we agree with you on the first issue, there's no reason for us to reach ineffective assistance counsel, is there? If we agree, Mr. Smart is entitled to a new trial because of inadmissible evidence. If this court finds that the evidence made it not harmless beyond a reasonable doubt, yes, your honor. And so that's one question. The second question, and I did notice the same thing. It certainly, at least as to the March 29, 2018 incident, that clearly came in through the competition for the stipulated testimony. Does that help your inadmissible evidence argument? Or are you only using it for your ineffective assistance? I'm sorry, can you repeat the question? Yeah, I'm saying to the fact that these other incidents that the trial court actually said were not admissible came in, does that play in in any way to your, Mr. Smart is entitled to a new trial because inadmissible evidence was used at this trial? I know you're right. So the other inadmissible acts coming in only applied to the ineffective assistance of counsel claim. The first claim is specifically about the one other act that was deemed admissible. Because basically you forfeited or his lawyer forfeited any objection on those only two acts. Yes, your honor. So as I was saying, there were six instances where these other acts came in. And then defense counsel stipulated. There's absolutely no reason that defense counsel should have allowed in this evidence and then stipulated to it. There was absolutely no trial strategy that defense counsel could have been executing. It was simply unreasonable behavior. And it was extremely prejudicial because the trial court then heard evidence that it deemed more prejudicial than probative pretrial. And it allowed the state to perpetuate its argument that Mr. Smart displayed a pattern of abusing boys. This was just more evidence. It just made that the state's argument stronger. I'm sorry. One last question. Was it the same lawyer who presented the who argued that this evidence should not get in who then did the trial? Yes, your honor. And that's another reason why this couldn't have been trial strategy. His trial strategy clearly pretrial was to make it so these other acts were not admitted. So it would make no sense for his trial strategy then to be to allow them to be admitted. That just is so unsound and it cannot be trial strategy. Now, I wanted to move on to the other instances of ineffective assistance beyond defense counsel allowing in all of this other inadmissible other act evidence. So this is now the inadmissible hearsay evidence that defense counsel allowed in. So the state on multiple instances elicited inadmissible hearsay in the form of prior consistent statement hearsay and implicit assertion hearsay. Not only did defense counsel fail to object to all of these instances of inadmissible hearsay, but he also emphasized much of this hearsay and even elicited the contents of the inadmissible text message. Again, there was absolutely no reason for defense counsel to do this. All it did was prejudice Mr. Smart. It destroyed Mr. Smart's credibility and it bolstered the credibility of the complaining witness. All in all, there were 10 references throughout this trial to the inadmissible text messages that JP allegedly sent Maya. There were seven instances of inadmissible other act evidence that came in. And as I said, this destroyed Mr. Smart's credibility. It bolstered the credibility of the state's main witness, and it violated Mr. Smart's right to a fair trial. For these reasons, I ask that you reverse his conviction and remand for a new trial. Just really quickly, I want to back up a second because you're saying that the trial judge never referred to the evidence that was admitted regarding the touching of the buttocks. This is only the issue. But the state argues that, I'm sorry, you say that the trial court did mention it. The state argues that the trial court never mentioned it. And I'm just trying to reconcile that because I wasn't clear from the record. Yes, Justice Walker. So when the trial judge found Mr. Smart guilty, she did not explicitly reference the other acts. But as I was discussing with you previously, that presumption that she wasn't considering this information can be rebutted by the record. So the one instance where it was a rebuttable presumption is where she deemed the evidence admissible pre-trial. But I also want to point again to Naylor because Naylor was also a bench trial where there was inadmissible prior conviction that was inadmissible, but it was still brought into the record. When the trial judge found Mr. Naylor guilty, she also did not explicitly reference this inadmissible evidence. But the reviewing court still found that because it was a credibility contest, because there was so little evidence, that finding Mr. Naylor guilty necessarily meant that this prejudicial information, which damaged his credibility, played into the finding even though it wasn't specifically referenced. So it's the same exact pattern here, which is why the state's claim that these other acts, this inadmissible evidence wasn't mentioned, that holds no weight when you consider Naylor. Thank you. Anything else from the panel? All right. We'll see you again on rebuttal. Thank you. Yes, let's start with Frech because I think it's really important to understand what Frech is talking about. Frech is a situation where the defendant denied the behavior that he was charged with, the sexual conduct. And Frech said, because I deny this, it's not an issue. Frech did a careful analysis of the case law and found that there are two lines of cases. One, where specific intent of a charge involves the issue of specific intent, where a particular charging offense, which would be the case here. We had three counts. The first is sexual penetration. You don't have to show a specific intent, but the other two were sexual conduct. And as the defendant points out in her opening brief, sexual conduct, part of that definition is that the touching and fondling be for the purpose of sexual arousal or gratification. So right there, the people have to show that it was not inadvertent. It was not for a proper purpose. It has to be for the purpose of sexual arousal or gratification. So Frech looked at that line of cases. And then it also looked at a line of cases that said that the issue of intent is only at issue if the defendant makes it an issue. And Frech found that where defendant completely denied the purpose for his conduct, it would still come in. The other crime evidence would still come in, the prior bad act, because he had an interest in a particular class of victims, young females in that case. In our case, proclivities involving young males. I'm really having trouble. Go ahead and finish, but distinguish that from propensity. You have an interest in young females. You've molested them before. Isn't that propensity? Well, we have to show a specific intent here. And the way we show the specific intent was through not only what the defendant did, which he denied. He admitted being in the bed with JP. He admitted taking him around. He admitted, you know, taking him to McDonald's and feeding him. But he just denied the sexual conduct. The Frech case talked about. He actually denied any touching at all. He did Frech. I'm sorry. Defendant did deny any touching at all. That's correct. But by using the other crime evidence, the prior bad act evidence where he actually engaged in sexually motivated touching of the buttocks of the other teen, it helped prove the intent in this case. And I will also say that Frech cited to Luzak, which is a first district case that found the same thing. Luzak was a defendant denying he admitted he gave a ride to this young female victim, but he denied any kind of sexual conduct. And the victim's version was completely different. Other crime evidence was allowed to show that defendant's intent to sexually assault the victim. So we have situations where intent is an issue, but defendant can also make it an issue by admitting to many of the acts, the act of being together, the act of giving a ride, the act of climbing in bed with this young man, but then denying the actual physical acts. Now, when you're looking at propensity and your your question went to propensity and propensity, we don't have to show nearly the it doesn't have to fit within a common law pigeonhole, if you will. He's done it before. Therefore, he did it this time. We don't have to show nearly the the similarities which we have in this case. We don't have to show that it goes to an intent or a knowledge or a motive or a common design or any of those purposes. It's simply he did it before. Therefore, you can infer that he did it this time. In this case, the inference goes to the specific element of intent, which not only did the state have to prove, but the defendant placed an issue by admitting to parts of the offense that is being together. He didn't admit to any of the offense, but he admitted to being together with JP, sleeping with him on the bed, trying to contact him through Snapchat after JP had left and gone back to his home in Philadelphia. So there were a number of things. He just simply denied the acts themselves so that he could deny the state an opportunity to prove his sexually arousal or sexually gratification, sexually motivated gratification, which are required for the people to show in counts two and three in this case. So there are differences between propensity and seeking the evidence for purposes of the other difference. And I guess I would point that out as well is when you look at propensity, it can only come in under one fifteen seven point three or if you have a domestic violence case, one fifteen seven point four. But together with propensity come restrictions by the statute. So the statute requires certain charges to be present. And then the other crime must meet those certain categories as well. That we agree that we did not meet those criteria. Correct. OK, that's correct. We did not because touching the buttocks of a 16 year old would not qualify technically as sexual conduct the way it would if the child were under the age of 13, when it would be touching of any part of the body of the child. So the fact that his his victim was 18 would put him outside the parameters of that definition. Nonetheless, Judge Howard, within her discretion, decided that his touching of the 18 year old, his grabbing his buttocks and talking about his soft spot and isolating the kid, meeting him through the breakthrough ministries. Those things suggested that there was a sexually motivated component sufficient to allow it to come in on the purpose of intent. Can I ask you a question? I'm sorry. Go ahead. No, go ahead. Are we permitted to infer from the fact that you were originally asked to have this? Not you, but you're the state asked to admit this under the statute as propensity evidence that you recognize it's actually propensity evidence. Are we permitted to make that inference? You know, I don't think we can make that inference because the state filed an amended motion and corrected the information. What happens in these cases, and I'm sure this comes as no surprise to the court, these motions, these pretrial motions are filed months in advance of trial. And they're often put together in a more boilerplate fashion with an applied section to the motion. And so these motions will often be generic, but defendants, and this really goes to the ineffective assistance of counsel point. Defendant's response was an excellent response because he pointed out, hello, this does not fit within the statute. And if that's the purpose for which you're seeking admission, the motion should be denied. And after reviewing the defendant's response, the people filed an amended motion and recognized that it couldn't come in under the statute, but it could come in under common law for a specific intent purpose. And so I think, you know, the fact that the motion was filed and it was a kind of a generic boilerplate motion with an as applied piece was corrected by the filing of the amended motion. Now, looks to me like your amended motion relied on the statute as well, but we'll make our own decisions. Yeah, and I think you can look at the hearing. If you look at the hearing on June, I think it was June of 2021, the other crimes hearing, the prosecutor clarifies that this is not what they are not seeking admission under propensity. They're not seeking admission under the statute, but under the common law. OK. Miss Boland, I'd like to ask you about French. You know, our reading of that case indicates that the defendant did put intent at issue. He gave a tape recorded interview, which was played at trial, and he admitted that he had masturbated, masturbated naked inside his house and that while he was doing so, he walked to the screen door and opened it to check for mail. And he said that he didn't see the victim, but if she had been outside that she might have misinterpreted his actions. So isn't that an instance of the defendant putting his intent at issue such that the state could then offer the other acts evidence to establish intent? Well, I think in French, when you're talking about masturbation, a conduct, there is no intent required. So the defendant might have said, I didn't know she was out there or that certainly wasn't what I was planning to do. The defendant in our case says I was planning to sleep. I passed out because I was drinking and I was just planning to sleep. I wasn't planning to do anything else. And I never did anything else. So the defendant, you might say, went a little further in French, but I will point out in Luzak, it was a matter of giving a ride to the victim. And that's the first district case. French is the second district case. And in that case, the defendant's version was completely separate from the victim's version. And in that case, the other crime evidence was proper to show the intent to commit a sexual assault as opposed to just give a ride to the victim. So there you have a very similar case. And I think French did a good job of analyzing when and how that evidence comes in on intent. And remember, too, that there are cases and they were discussed in French where courts allow such evidence in because the state has to prove a specific intent. When you're talking about penetration crimes, you're not talking about a specific intent. We don't have to show that. But when you're talking about conduct crimes, we do. So if the defendant can simply say, why it didn't happen, therefore, the fact that you can come in because I said it didn't happen, I think it's really important to allow the state to meet its burden of proof. How can the state meet its burden of proof if the defendant can simply foreclose all opportunity to show that sexual arousal or gratification? Now, there's a distinction in the acts between the penetration where you don't have to show it, the erect penis part of the first count. But in the second and the third counts where you're talking about touching and fondling, you have to show it. So hoping that the defendant says it was inadvertent or, yeah, I touched his penis, but I was just helping him with a towel or something. Yes, defendants will make those defenses, but they're foreclosing the state from showing the specific intent, which is an element of the offense. And so that's why there's a diversion. So, Ms. Bowling, you believe that it was the incidents that occurred prior to all of this that led to the intent, that is, the taking to the zoo, taking to the concert, taking to get food, inviting him into his bed. You believe all of that gets you to the intent to omit this evidence, correct? All of that, plus the corroborative evidence from the EG case. So that's how it was used in Luzak. The EG case was used to show that element, to corroborate that element of the conduct of the defendant up to the time that he denies the actual sexual acts. But Ms. Bowling, that sounds like modus operandi to me. Yeah, well. But you haven't argued. No, it wouldn't have met the signature. It wouldn't have met the level of a signature. This level of a signature is a very unique type of other crime evidence, as the court well knows. MO, you have to show literally almost a signature. There has to be something so unique or so unusual or so. There's nothing really unique about a person who has a proclivity towards young males that he wants to isolate, that he wants to have a relationship with of some sort. And that relationship is sexual in nature. So I don't think at this level, and the reason I haven't argued MO here is because I don't think it rises to the level. General similarities are acceptable for any other type of common law admissibility, but MO requires a higher threshold. And I don't see it here. So Ms. Kerlin, and she'll correct me if I'm misstating her, but her position, perhaps to state it differently, is that if, in fact, the defendant touched the victim on his genitals, then he's guilty, that there's no issue about his intent. If, in fact, it happened, he intended it. And she'll correct me if I'm wrong, but that's the argument. And so the only question is, did it happen? Yeah, there can be other reasons. For instance. But he's not saying that there was another reason. He's not saying that it was incidental or it was accidental or it is unwittingly, that sort of thing. He's saying it just never happened. That's right. He is saying it's never happened. That's my point, is he's controlling the ability of the state to meet the evidence, to meet the elements of the offense. He is simply able to say, well, I didn't touch him. Therefore, you can't introduce the fact that I touched another teenager under similar circumstances in a sexual way because I foreclosed you from doing this because I didn't say I rolled over in the bed and bumped him or I gave him a towel and I might have brushed against him or. But what's so wrong with that? What's so wrong with that? Well, because in some cases, the state doesn't have the requirement to show the element of the offense of the specific intent. In this case, we did. We have to be able to show it. And if the defendant can foreclose us from showing the evidence by simply a defendant's denial, I think that makes it impossible for the state to show these cases. And that's precisely why other crime evidence is allowable in these cases. So the cases that you're relying on are Wilson, French and Luzet, correct? Yes, that's right. OK, thank you. Sure. And then you believe that you believe that this that even the admission, even so, taking everything we just said and that you and Justice Taylor just discussed that the admission of this evidence was harmless. Yeah, ultimately, we're talking about Judge Howard here. Judge Howard is a very experienced trial court judge down at 26th Street. She has seen and tried many of these cases. She is presumed to know the law and follow the law and in her discretion. And that's really what we're looking at here. Did she have discretion to allow this particular incident with E.G.? And in her discretion, she did allow it. She heard it. But then she didn't ever address it in her rulings. She addressed J.P.'s credible testimony and she did address the Frank Smart and his in the home at the time with their children out on the porch or in the living room or going up to check on the kids in the bedroom. She addressed their credibility. She never said a word about the defendant's credibility. Obviously, she did not believe defendant's version of events. So she knew that while this evidence came in in the bench trial, she didn't rely on it at all in her rulings. She talked about the evidence of the statements and the testimony of J.P. and the credibility of J.P. and the credibility of Frank Smart and Amanda, who talked about going up and kind of peeking in the bedroom. There were a series of kids. They were all in the bedroom with defendant because that's where the TV and the games were. They had their own bedroom, but apparently at some points during that evening in question, they were up in the bedroom with defendant. Um, and so she did not find them to be embellishing or forgetful, but she did not mention the defendant at all. Um, and so she did not find him to be credible or, um, by his story, if you will. But yes, I think it is close, though, right? Miss Bowman. You agree with Miss Carlin that the evidence is close just because a defendant contradicts the statements of J.P. at some point in the story does not mean that the evidence is close. Just because a defendant says, yes, I took him out. Yes. I wanted to see him. Yes. I went to the concert with him. Yes. I wanted to Snapchat him. Yes. I had him. I directed him to my bed. Yes. I walked into the bathroom when he was taking a shower and I gave him a towel through the glass door. Um, just because defendant gets to all the end of that and then says, oh, but I did not touch him. That does not make the case a close case. It simply means there are two versions and the trial court in this case, Judge Howard in her, um, discretion examines the witnesses, watches them, sees their demeanor and either decides they're credible or decides they're not by not finding the defendant credible by not mentioning it and not buying defendant story. I suggest to you that that does not mean that this case is closely balanced. The only people in that room were the defendant and the victim. And the court even makes that point. Judge Howard makes that point. Even though she found Frank and Amanda credible, she said that you were not there. You were not there all night in that room. The only person she found credible was JP. So no, I, I don't agree that simply, um, disagreeing with a victim's version makes you, um, makes the case closely balanced. Do you agree that the burden is on the state to show beyond the reason? Well, what is the standard to show? And I'm asking you, what is the standard that the error was harmless? Evidentiary rulings are not required to be harmless beyond a reasonable doubt. They're evidentiary rulings. And even if the court abused his discretion, the court never addressed this particular incident, which was a pretty minor incident. When you look at Naylor, you're looking at a situation where it was a prior conviction. Um, the prejudice from that is pretty strong, uh, because it, uh, Is the burden on you to show it was harmless? Is the burden on the state to show it was harmless? And what is the standard? The burden is on the state to show it's harmless. Yes, absolutely. But it's an evidentiary ruling. And so it had no effect on the probability of a different outcome. It had no effect on the court's ruling. The court never addressed it in her ruling. And therefore, the state believes that with the other evidence, the J.P.'s credible testimony, that any error in the other crime evidence was in fact harmless in this case. Does that answer your question? I'm still, and I really am not sure what the burden, what your burden is, how, what you have to show to show us that. But you do agree it's your burden. Well, I will tell you, we cited Neves, or Neves, I don't know, N-I-E-V-E-S, the People v. Neves case. It's a Supreme Court case. It says that improper introduction of other crimes evidence is harmless when a defendant is neither prejudiced nor denied a fair trial based on its admission. So that comes from our Supreme Court. I don't, I, I, yes, okay, yes. But how do you, what, what is your burden of showing us that? I see. The question is, was it a material factor in the conviction? And I think the only thing that we can look at in a bench trial is the court ruling and to determine whether the court actually considered certain evidence in making its ruling. In this case, the court did not consider the other crime evidence in making its ruling. And in fact, the court did not expressly discuss it. We don't know what the court can say, right? Yes, we can't know what's in the court's mind. But, you know, the court has the option to discuss all of the evidence and did discuss evidence on both sides of the case and did not mention this in her ruling. So obviously it doesn't seem to the state that it could have been a material factor in her ruling. Anything else from anyone on the panel? Did you want me to address ineffective assistance at all or no? Sure. Why don't we briefly discuss that? So the one point I would make about ineffective assistance of trial, ineffective assistance of counsel, is that defendant points to several mistakes in strategy and says, well, because some of these things could have been hearsay or some of them were not beneficial to the defendant. But if you look at the defendant's trial strategy, if you look at it as an overall, you see the responses he made to the other crimes motion. He got the state to withdraw the motion and limine through his response on the prompt complaint issue. His responses are pretty good. And it's obvious that his strategy in this case was to paint defendant as an upstanding basketball coach who devoted his life to working with children. You can see that in the questions that he raised with Sierra, who is the sister and the coworker of defendant, sister of the victim. And he asks her about the breakthrough ministries policies, and he gets her to admit that she takes kids home often and that it would just be a matter of a protocol issue. He also, in his own case, puts on Robert Muzikowski, if I'm saying that name correctly, who has an opinion, knowing and working with the defendant as a basketball coach and decides to ask him questions about that. And the Muzikowski talks about his reputation being good and positive. And he is also from Breakthrough Ministries. So he used the protocol issue in Breakthrough Ministries to minimize the prior bad act evidence or rebut it, if you will, because it was a company policy about taking kids home in their car. But that's all it was, the company policy. And so he raises that and he tries to use it. Now, it doesn't ultimately succeed. He is defendant is found guilty anyway. But the claimed mistakes that defendant raises here not only have to be matters of trial strategy, they also have to be matters which prejudice the defendant. And so we come back to our presumptions that the trial court considered admissible evidence. Nothing in this record shows otherwise. Defense counsel has stated the only thing was the admission in a pretrial motion, which was months before the trial. And the court never discussed the prior bad act evidence and found the case was about JP and Frank and Amanda and these witnesses. So while the defense tried to use some of this evidence to essentially rebut the notion of another crime, the fact that it isn't successful does not mean defendant was ineffective as counsel. Any questions on that? Questions? All right. Thank you very much. Thank you. Yes, your honor. I'll be brief. The first brief point I want to make, just because we just discussed ineffective assistance of counsel, I'll just go there first, was that defense counsel's failure to object to these inadmissible other acts and to stipulate was objectively unreasonable. There was no trial strategy. And though the state points to all of the other evidence and everything else defense counsel does throughout trial, that has no bearing on these other instances where defense counsel allows in this incredibly prejudicial information. And I just want to quickly discuss how the presumption is rebutted that that other act evidence wasn't considered. If you look at page 503 of the record, right after defense counsel stipulates to it, the trial judge says this evidence has been accepted and made a part of the record. So she is saying that that stipulation about this other act that was deemed more prejudicial than probative, it is now part of the record and that she is considering it with all the other evidence. So that rebuts the presumption. I now just want to move on to back to the intent issue. Now, Justice Walker, you made a really good point about how the state is trying to use this other act evidence to show this other act shows Mr. Smart's intent when he took JP to the zoo, when he took him to the fireworks. You know, when he did all of these other acts, the state is trying to show that the other act proved his intent in all of this other behavior leading up to the alleged crime. And that just shows how improper this application of the other act evidence is because it's allowing the exception to swallow the rule. It's allowing this other act to prove all of these other incidents, the intent behind these other incidents that aren't even the charged crime. And it's still a propensity argument that defense counsel or that Mr. Smart harbored the intent before. So he harbored it again in all of these other instances. That's a propensity argument. And now I quickly just want to address the two other pieces of case law, Frech and Luzak. So one thing that the state emphasizes about Frech is that it goes through all of this case law and it, you know, it puts them into two different buckets to come to the termination that this other act evidence is admissible. But so Frech is a 2017 case out of the second district. One case that Frech, despite discussing all of these cases, one case it does not discuss is Cardamone, which is a 2008 case out of the second district. And Cardamone has very similar facts to the case at hand. The defendant there, he denied committing the crime, but he did admit that he was with the alleged victims. And in Cardamone, the court found that this other act evidence was not admissible to prove intent because he didn't say that he did it, but it was an accident. It was just because he denied it, this other act evidence could not have been admitted. So, you know, Frech goes through all these cases to come to its conclusion, but it doesn't even discuss Cardamone, which is in the same district. So that's just another reason why Frech is unsound and shouldn't be relied upon in this case. And then I briefly just want to talk about Luzak as my last point. Luzak, yes, it is a first district case, but it is very focused on how similar the other acts were to the charged crime. In Luzak, the defendant, he picked up the victims in the same exact way in the car. He said the same exact things to them when they got in the car and he committed the same exact acts. So the other acts were admissible both for intent, but also M.O. And the entire opinion really just focuses on the similarity of the other acts in the case at hand. Here, there is no assessment of that. The other act is not similar to the charged offense. And so Luzak doesn't really apply or it can be easily distinguished. So if there are no further questions, I just ask that you reverse this case and remand for a new trial. Any further questions? Thank you both very much. Thank you again, Mr. Holman, for filling in for your powers. We will take this case of our advisors and we will hear from Mr. McClain first.